UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| NURIS AKKABAKOV, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-00172-JRS-MG |
| | ) | |
| BRANDON CROWLY, | ) | |
| SAMUEL OLSON, | ) | |
| TODD M. LYONS, | ) | |
| KRISTI NOEM, | ) | |
| PAMELA JO BONDI, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Nuris Akkabakov is a noncitizen who was arrested by U.S. Immigration and Customs Enforcement ("ICE") officials on February 5, 2026, and is detained at the Clay County Jail in Brazil, Indiana. Mr. Akkabakov now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a bond hearing pursuant to 8 U.S.C. § 1226(a). Dkt. 1 at 24–26.

For the reasons explained below, the Court grants the petition to the extent that no later than **April 2, 2026**, Respondents must certify that they have either: (1) afforded Mr. Akkabakov an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) released Mr. Akkabakov from custody, under reasonable conditions of supervision.

## I.    Background

Mr. Akkabakov is a citizen of Kyrgyzstan who entered the United States on July 5, 2023 when he voluntarily presented himself to immigration officials for inspection at a port-of-entry by

using the CBP One program. Dkt. 1 ¶ 1. After being inspected by immigration officials, Mr. Akkabakov was released on parole and issued a Form I-94 with a class of admission DT. Dkt. 1-2. This authorized Mr. Akkabakov to remain in the United States until April 18, 2025. *Id.* This was later extended until July 3, 2025. Dkt. 8-1 at 5 (Most Recent I-94). He was also issued a Notice to Appear in immigration court for removal proceedings under Section 240 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1299a. Dkt. 1-3. The Notice designated Mr. Akkabakov as an "arriving alien" and alleged that he "applied for admission on July 5, 2023 at the San Ysidro Port of Entry" and he is "an immigrant not in possession of a valid unexpired visa . . . as required by the [INA]." *Id.* Since entering the United States, Mr. Akkabakov, applied for asylum, obtained employment authorization, and began working as a commercial driver. Dkt. 1 ¶ 4.

On February 4, 2026, Mr. Akkabakov was arrested by the Sauk County Sheriff's Department and charged with traffic violations and operating a vehicle while under the influence. Dkt. 8-1 at 7. ICE placed a hold on Mr. Akkabakov for immigration enforcement after verifying that his parole had expired. *Id.* at 10. ICE arrested Mr. Akkabakov on February 5 pursuant to a Form 1-200 Warrant of Arrest for interior enforcement issued "pursuant to sections 236 [i.e., 8 U.S.C. § 1226] and 287 of the [INA]." Dkt. 8-1 at 6. Since then, he has been detained under the authority of ICE at the Clay County Jail.

There is no record that Mr. Akkabakov moved for or has been given a custody re-determination hearing.

## II.    Discussion

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Mr. Akkabakov claims that his current detention violates the INA (Count I), the Due Process Clause

2

of the Fifth Amendment (Count II), and the Suspension Clause in Article I of the U.S. Constitution (Count III). Dkt. 1 ¶¶ 53–68. Respondents argue that Mr. Akkabakov's petition is premature; that he is lawfully detained pursuant to 8 U.S.C. § 1225(b)(1) and to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained pursuant to 8 U.S.C. § 1226(a); and that his detention is constitutional. Dkt. 8.

The Court finds that Mr. Akkabakov's detention is governed by § 1226(a) and that it is unlawful because he has not been afforded a bond hearing. Because Mr. Akkabakov is entitled to habeas corpus relief on these grounds, the Court does not address his other arguments.

### A. Exhaustion

Respondents argue that Mr. Akkabakov's claims are premature because he has not moved for a bond hearing. Dkt. 8 at 3–4. This Court has previously determined that exhaustion is not required in nearly identical circumstances because doing so would be futile given the holding in *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 220 (BIA 2025), that immigration judges lack authority to hear bond requests or grant bond to noncitizens such as petitioner. *See Delgado Avila v. Crowley*, No. 2:25-cv-00533-MPB-MJD, 2025 WL 3171175, *2 (S.D. Ind. Nov. 13, 2025); *Mohammed v. Olson*, No. 1:25-cv-2404-TWP-MKK, 2025 WL 3541819, at *2 (S.D. Ind. Dec. 10, 2025); *Chesme Bazurto v. Olson, et al.*, No. 1:26-cv-00122-SEB-CSW, 2026 WL 285993, *2 (S.D. Ind. Feb. 3, 2026); *Morales Sandoval v. Crowley, et al.*, No. 2:25-cv-00560-JRS-MKK, 2025 WL 3760760, *2 (S.D. Ind. Dec. 30, 2025); *Choudhary v. Swearningen, et al.*, No. 2:26-cv-00041-JPH-MG, 2026 WL 205513, *2 (S.D. Ind. Jan. 26, 2026); *Diaz Gonzalez v. Swearningen, et al.*, No. 1:25-cv-02141-RLY-TAB, dkt. 14 at 8-10 (S.D. Ind. Nov. 18, 2025). Respondents cite no intervening precedent that would change this Court's determination that exhaustion is not required.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

Section 1226(a) provides:

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond . . . ; or

(B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the

Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**C. Mr. Akkabakov Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

The record reflects that Mr. Akkabakov's detention is authorized by § 1226(a). As discussed further below, this makes him eligible for a bond hearing, and his continued detention without a bond hearing violates the INA.

Here, the Respondents argue that Mr. Akkabakov is subject to mandatory detention pursuant to § 1225(b)(1) because he was designated as an "arriving alien" when he was inspected by immigration officials on July 5, 2023. Dkt. 8 at 1, 17–18; *see* dkt. 8-1. At another point, they argue that Mr. Akkabakov is now detained pursuant to § 1225(b)(2)(A) because his parole expired. *Id.* at 7. Respondents do not explain or offer any legal authority supporting the proposition that someone could be both subject to expedited removal under § 1225(b)(1) and simultaneously placed in full removal proceedings under § 1299a.[1] Furthermore, there is no evidence in the record that immigration officials have placed Mr. Akkabakov in expedited removal proceedings. Indeed, the Notice to Appear designated by the Respondents plainly places Mr. Akkabakov in full removal proceedings and initially set an immigration court hearing for October 23, 2025—more than two years after the issuance of the Notice. Dkt. 8-1 at 1. Mr. Akkabakov's next hearing is now scheduled for December 10, 2027. Dkt. 1-3 (Notice of In-Person Hearing). As such, the Respondents have not supplied a factual or legal basis for their claim that Mr. Akkabakov's detention is governed by § 1225(b)(1). Therefore, the Court proceeds to discuss the Respondents' claim that Mr. Akkabakov's detention is also authorized by § 1225(b)(2)(A).

This Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than noncitizens who have lived in the interior of the United States for years. *Morales Sandoval v. Crowley*, No. 2:25-CV-00560-JRS-MKK, 2025 WL 3760760, at *3–6 (S.D. Ind. Dec. 30, 2025). As the Court has previously explained, Respondents' interpretation of the statute when applied to noncitizens such as Mr. Akkabakov (1) disregards the plain meaning of § 1225(b)(2)(A); (2)

---

[1] *See Rodriguez-Acurio v. Almodovar*, 2025 WL 3314420, at *12–22 (E.D.N.Y. Nov. 28, 2025) for a thorough explanation as to why § 1225(b)(1) does not logically apply to someone detained within the interior of the United States after residing therein for a few years.

disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *Id.*

The Respondents here cite contrary decisions regarding § 1225(b)(2)(A) but concede that this Court's previous analysis "control[s] the result in this case should the Court adhere to the legal reasoning in those prior decisions." Dkt. 8 at 11. Notably, the Respondents cite a recent Fifth Circuit Court of Appeals decision, which upheld the government's interpretation of § 1225(b)(2)(A) in finding that "seeking admission" is a permissible redundancy for "applicant for admission." *Buenrostro-Mendez v. Bondi*, 2026 WL 323330, at *5 (5th Cir. Feb. 6, 2026). The Court is not convinced, however, that the Seventh Circuit will follow *Buenrostro-Mendez* and therefore continues to rely on *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025), as persuasive precedent. In *Castañon-Nava*, the Seventh Circuit determined that the phrase "seeking admission" in § 1225(b)(2)(A) cannot be logically seen as synonymous with "applicant for admission" as defined in § 1225(a)(1) without violating several established canons of statutory interpretation. 161 F.4th at 1061. This Court has applied those established canons of statutory interpretation in its previous cases and has reached the same conclusion. Because neither *Buenrostro-Mendez* nor the other cases cited by the Respondents are binding on this Court, the Court declines to depart from its previous reasoning.

Moreover, the undisputed facts demonstrate that Mr. Akkabakov's detention must be authorized by § 1226(a) rather than § 1225(b)(2)(A). When Mr. Akkabakov arrived in the United States in July 2023, he underwent inspection by immigration officials at the port-of-entry. He was placed in full removal proceedings because he lacked proper documentation, but then released on parole. Then, almost three years later immigration officials arrested Mr. Akkabakov in Sauk

County, Wisconsin. In doing so, immigration officials served Mr. Akkabakov an administrative warrant citing § 1226(a) as the basis for his arrest and detention. *See Rodriguez-Acurio*, 2025 WL 3314420, at *24 ("Although not dispositive standing alone, Rodriguez-Acurio's arrest on a warrant under Section 1226 supports the conclusion that her detention is governed by Section 1226(a)'s discretionary framework."). In sum, the government's actions and its paperwork reflect that Mr. Akkabakov's detention is authorized by § 1226(a). It cannot now maintain that he is subject to § 1225(b)(2) and therefore categorically ineligible for discretionary release. *See Singh v. Bondi*, No. 1:25-cv-02101-SEB-TAB, 2025 WL 3029524, at *6 (S.D. Ind. Oct. 30, 2025) (citing *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025).

The Respondents argue that the fact that Mr. Akkabakov's parole expired means that he returned to "the custody from which he was paroled." Dkt. 8 at 7, 17–18 (citing 8 U.S.C. § 1182(d)(5)(A) (stating that after humanitarian parole terminates, "the alien shall forthwith return or be returned to the custody from which he was paroled."). But they do not then explain how or why expiration requires mandatory detention under § 1225 and precludes detention under § 1226. Indeed, this Court has found that nothing in 8 U.S.C. § 1182(d)(5)(A), the statute authorizing parole, requires a "return" to mandatory detention when parole expires. *See G. v. Olson et al.*, No. 2:25-cv-00584-MPB-MKK, dkt. 23; *see also Qasemi v. Francis,* 2025 WL 3654098, at *10 (S.D.N.Y. Dec. 17, 2025) (explaining that "custody" in 8 U.S.C. § 1182(d)(5)(A) refers to status, not to physical detention, and that returning to custody means relinquishing freedoms associated with the parolee's status such as work authorization or public benefits); *Clark v. Martinez*, 543 U.S. 371, 385 (2005) (explaining that § 1182(d)(5)(A) does not "affirmatively authoriz[e] detention,

8

much less indefinite detention"); *Coalition For Humane Immigrant Rights v. Noem et al.*, 2025 WL 2192986, at \*26 (D.D.C. Aug. 1, 2025).

The Respondents also cite the regulation governing humanitarian parole, 8 C.F.R. §§ 212.5(e)(2)(i), as grounds for detaining Mr. Akkabakov under § 1225. Dkt. 8 at 7. This regulation provides that upon expiration of humanitarian parole under § 1182(d)(5)(A), the noncitizen "shall be restored to the *status* that he or she had at the time of parole" and that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under section 235 or 240." 8 C.F.R. § 212.5(e)(1)–(2) (emphasis added). Nothing in this regulation leads to the conclusion that § 1225 necessarily governs Mr. Akkabakov's detention. Indeed, the second part of the sentence "appears to provide for either inspection under section 235 (which can then lead to either expedited or regular removal proceedings) or, if the parolee does not require any 'further inspection,' to section 240 proceedings." *Coalition For Humane Immigrant Rights v. Noem et al.*, 2025 WL 2192986, at \*26 (D.D.C. Aug. 1, 2025). As seen above, Mr. Akkabakov's Notice to Appear explicitly places him in full removal proceedings under "Section 240" of the INA. *See* dkt. 8-1.

In sum, after his parole expired, Mr. Akkabakov returned to the same status that he had before he was granted parole. Nevertheless, "[t]he statute does not require the Court to pretend that [Mr. Akkabakov] was never paroled and permitted to live freely in this country." *Qasemi*, 2025 WL 3654098, at \*10 (S.D.N.Y. Dec. 17, 2025). "A noncitizen is not reverted by operation of law to status as an arriving alien—they remain a noncitizen living in the United States who used to be paroled and must be treated by the INA accordingly." *Id.* Thus, instead of returning Mr. Akkabakov back to his physical location as an "arriving alien" at the port-of-entry in San Ysidro, the provisions strip him of his parolee status and mandate that he be treated like any other "applicant for

9

admission" in his current position. As seen above, this means that his detention is governed by § 1226(a).

### D. Opportunity for Bond Hearing

In the alternative, Respondents argue that Mr. Akkabakov is being lawfully detained under § 1226a "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 8 at 18. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* at 18–19 (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Mr. Akkabakov will have a bond hearing. In fact, Respondents contend that Mr. Akkabakov is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition. Mr. Akkabakov has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, his detention pursuant to § 1226(a) is currently unlawful.

### III.    Scope of Relief

Mr. Akkabakov is entitled to a bond hearing under § 1226(a), and he has not received one. Therefore, his continued detention without a bond hearing violates "the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984).

Mr. Akkabakov argues that he is entitled to immediate release from custody. Dkt. 1 ¶¶ 69– 75. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to

secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, Mr. Akkabakov maintains—and the Court agrees—that he is subject to § 1226(a), which allows the government to "continue to detain" him. 8 U.S.C. § 1226(a)(1). Mr. Akkabakov's custody is not unlawful because of the very fact that he is detained. Rather, his custody is unlawful because he has not received the bond hearing that the law requires. Thus, the Court must order Respondents to follow the law that governs Mr. Akkabakov's detention by providing an individualized bond hearing.

In the alternative, Mr. Akkabakov asks the Court to order the Respondents to provide him with a constitutionally adequate bond hearing "at which the government bears the burden of proving dangerousness or flight risk by clear and convincing evidence." Dkt. 1 at 25. The Court does not have the authority to do so. The Seventh Circuit has not answered the question of who bears the burden of proof in an administrative bond hearing, and the circuits that have answered the question have not answered in unison.[2] The statute does not explicitly assign a burden of proof, and the accompanying regulations provide that "[t]he determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d); *see*

---

[2] Compare *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39 (1st Cir. 2021) ("We therefore conclude that the government must bear the burden of proving dangerousness or flight risk in order to continue detaining a noncitizen under section 1226(a)."); *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020) ("[T]he district court correctly ordered a new bond hearing where the Government bore the burden of proof."), with *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) ("[E]ven when there are deficiencies in individual § 1226(a) proceedings, they may be redressable through means short of major changes to the burden of proof."); *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) ("Espinoza did not meet his burden to show a likelihood of success on his claim that requiring an alien in a § 1226(a) bond hearing to show, by a preponderance of evidence, that he is not a danger to the community nor a flight risk violates an alien's rights under the Due Process Clause."); *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) ("[U]nder § 1226(a) the burden remains on the detainee at all times. [W]e perceive no problem . . . .").

*also Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (explaining that "aliens who are arrested and detained may generally apply for release on bond or conditional parole" under § 1226(a)(2) and "[t]o secure release, the alien must show that he does not pose a danger to the community and that he is likely to appear for future proceedings." (citing 8 CFR §§ 236.1(c)(8), 1236.1(c)(8) (2020)). Therefore, the Court directs the Respondents simply to afford a bond hearing that complies with § 1226(a) and its accompanying regulations.

Mr. Akkabakov also requests prospective injunctive relief regarding possible re-detention. *See* dkt. 1 at 25. The Court does not have authority to order such relief in a habeas proceeding.

## IV.    Conclusion

The petition for a writ of habeas corpus is **granted** insofar as the Respondents will have **until April 2, 2026**, to certify that Mr. Akkabakov has (1) appeared for a bond hearing before an immigration judge consistent with 8 U.S.C. § 1226(a) and pertinent regulations, or (2) been released from detention. The petition is **denied** to the extent it seeks additional relief.

The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 3/26/2026

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

Liberty L. Roberts
Church Church Hittle & Antrim
lroberts@cchalaw.com

Harun Taskin
Kent Law Partners LLC
htaskin@kentlawpartners.com

Paul Umbaugh, IV
DOJ-USAO
paul.umbaugh@usdoj.gov